SAMUEL BAROTZ & CO., INC. *v.* UNITED STATES [1]

[1] C. D. 59.

United States Customs Court, First Division

(Decided November 18, 1938)

*Siegel & Mandell* (*Sidney Mandell* of counsel) for the plaintiff.
*Charles D. Lawrence*, Acting Assistant Attorney General (*John J. McDermott*, special attorney), for the defendant.

Before McCLELLAND, SULLIVAN, and BROWN, Judges; BROWN, J.. not participating

SULLIVAN, Judge: This protest is against the decision of the collector of customs at the port of New York "assessing duty at 60% and ½¢ per inch under par. 1503 * * * on Imitation pearl glass bead, pearl coated glass bracelets, and sim. mdse. covered by entry named below (Entry 820916)." It claims "the reasons for objection under the Tariff Act of 1930 are that said merchandise is dutiable as an imitation pearl glass bead at 60% under par. 1503."

By amendment to the protest there has been added thereto several other claims, among them one that the merchandise is dutiable under paragraph 1503 at 35 per centum ad valorem, as spangles and beads, including bugles, not specially provided for. According to plaintiff's brief this appears to be the claim relied on.

The red-ink notation by the examiner on the invoice is "Solid Im. Pearl Beads Loosely Strung Par. 1503."

The official sample, Exhibit 1, is apparently an unfinished bracelet composed of strung glass beads resembling pearls in color only. The beads are rectangular in shape, each about ⅞ of an inch in length by one-fourth of an inch in width, slightly concave, the back of each bead being hollowed into a cavity. At the edges each of these beads is a trifle under a quarter of an inch in thickness. On the upper surfaces are raised designs incorporating flowers and leaves, which might be described as cameo-like or incrustations. The edges of each bead are pierced by two holes going entirely through the bead. By means of these holes and elastic cords passing through them, the beads are connected to each other in the form of a bracelet without clasps.

Plaintiff's witness, Barotz, testified he is a buyer with the plaintiff corporation, also does part of the selling and attends to the importation of merchandise.

He examined the consular invoice with entry 820916, and testified he is familiar with the article described as 30222, "pearl coated glass bracelets, loose ends, unfinished"; that Exhibit 1 is a sample thereof, and "is loosely and *temporarily* strung."

He testified as to his experience of fifteen years with imitation precious stones, imitation pearl beads, and beads in imitation of precious and

semiprecious stones, and that he is familiar with all varieties of imitation pearl beads. He then testified as follows:

Q. Based upon your experience will you state whether or not you regard Exhibit 1 as an imitation solid pearl bead?—A. I do not.

Q. You mean referring to Exhibit 1?—A. Right.

He further testified that in his opinion "an imitation solid bead is the alabaster bead which is made in round and oval beads and is coated with fish scale."

The witness produced what he testified "is known as cultured pearl." It was received in evidence as Illustrative Exhibit A. It is a string of graduated pearl beads in necklace length without clasps.

Illustrative Exhibit B, he testified, is a sample of an imitation solid pearl bead. This is a string of imitation pearl beads graduated and with a metal clasp, making it a complete necklace.

The witness testified he had never seen any pearl beads that are of oblong shape like those in Exhibit 1, nor with the decorative or cameo work flower effect on the surface; that he had seen imitation solid pearl beads in round, oval, and smooth forms, and always with a smooth surface.

He testified he had seen the articles represented by Exhibit 1 manufactured in Japan; that Exhibit 1 does not imitate a solid pearl bead; that as to its color, "We call it white."

On cross-examination he testified Exhibit 1 has the color of a real pearl; that imitations of precious pearls would not be made in the shape of Exhibit 1; that Exhibit 1 is a solid stone; that his concern offers articles like Exhibit 1 "for sale as bracelets. We call them novelties," and that he buys them as bracelets.

On redirect examination he testified that when he termed Exhibit 1 a "stone" he meant glass; that he orders Exhibit 1 in various colors, or "Brownish," "greenish, bluish, and rose colors"; that they are the same as Exhibit 1 except as to color. Two samples of colored articles like Exhibit 1 were marked Collective Illustrative Exhibit C.

Plaintiff's witness Bendheim testified he had been selling imitation solid pearl beads for "over 30 years"; that he is familiar with Exhibit 1, and has been for the last four or five years; that Exhibit 1 is not an imitation of a solid pearl bead for the reason "it is glass with a coating on it"; that he had never seen any imitation solid pearl beads similar in shape to Exhibit 1, nor in decorative form; that it had not any resemblance to a solid pearl; that he had not seen imitation solid pearl beads in any other form than "oval and round"; that he had had ten years' experience with genuine pearls such as Japanese cultured pearls, and that he had never seen such pearls in the shape and form of Exhibit 1; that he did not think it would be possible to decorate a cultured pearl or a genuine pearl "by a flowery surface effect, such as seen in Exhibit 1."

On cross-examination he testified that based upon his experience he would not say that the finish of Exhibit 1 was a pearl finish in lustre "because it is white" or "white or cream"; that "it is not the same color as the genuine or the imitation"; that Illustrative Exhibits A and B are pearls, and Exhibit 1 is not a pearl.

Defendant's witness Meyer testified he is a manufacturer of imitation pearls of thirty years' standing; that for twenty-five years he dealt in genuine pearls; that as to Exhibit 1 "the finish of this is a pearl finish." He then testified as follows:

Q. Would you say that the finish of Exhibit 1 compared in any way with the finish which you applied to your imitations of pearls?—A. Yes.

Q. In what way?—A. The reflection of the facets because of the material incorporated into the lacquer to produce this pearl effect.

Q. Does Exhibit 1 compare in color with genuine pearls?—A. The pearl appearance is comparable to some pearls—some natural pearls, some genuine pearls.

\* \* \* \* \* \* \*

Q. Can you tell the court, or do you know whether or not a cultured pearl can be produced with a flowered design in a form similar to Exhibit 1?—A. It has been the practice of the Japanese—\* \* \* I have seen quite a lot of these cameos that were inserted into a shell, and where a superficial skin of this natural pearl lacquer would be permitted to coat the surface of these cameo design ornaments.

Q. So that you would say that it is possible to manufacture cultured pearls into shapes and flowery formations like Exhibit 1?—A. It has been done.

He further testified that he had many times seen cultured pearls "in the shape of the flowery construction of Exhibit 1," although "not the exact design"; *that the shape, form, and design of such cultured pearls did not compare with the design of Exhibit 1;* that cultured pearls are regarded in the trade as real pearls; that Exhibit 1 is not the exact color of cultured pearls; that it "has a pearl lustre finish \* \* \* there is a difference in color."

On cross-examination he testified he had manufactured imitation pearls in the shape of Exhibit 1, but not with the design on the surface; that Exhibit 1 does not imitate a genuine pearl in structure; that "its surface color does imitate some genuine pearl—the color, lustre, depth of some genuine pearl"; that the resemblance between Exhibit 1 and genuine pearls he would say was "solely in the pearl effect," and "in all other respects it is not in imitation of the popular imitation pearl beads."

Defendant's witness Casey testified he is a United States examiner of merchandise; that he advisorily classified the merchandise in question "as imitation solid pearl beads, valued at over ¼ cent per inch, and a duty of ½ cent per inch plus 60% ad valorem" under paragraph 1503, for the reasons—

Well, in the first place, the materials, or the component parts of this article, Exhibit 1, were held under T. D. 44511 to be beads (see 59 Treas. Dec. 84);

secondly, they imitate in color pearls, and based on the last clause of par. 1528, it refers to imitation pearls, and provides that they should be classified under the same rates of duty as apply to beads of the same character in par. 1503. On that basis I classified them as I say.

He further testified that Illustrative Exhibit A was composed of cultured real pearls, and Illustrative Exhibit B "is an imitation pearl"; that Exhibit 1 compares in color with Illustrative Exhibit B, also with genuine solid pearl beads.

On cross-examination he testified he had never seen a real pearl bead that had engraving or relief work on the surface, nor with a hollowed-out interior, oblong in shape like Exhibit 1; that the only reason for his saying Exhibit 1 imitates a real pearl bead is that it is white or white cream in color; that "it may lack some of the definite lustre of the real pearl"; that he says it imitates a real pearl "because it has the color of a pearl, and it is a bead, and based upon those two characteristics."

Defendant's witness Kean testified he is an examiner of semi-precious stones and precious and imitation stones, pearls, and imitation pearls, and jewelry at the port of New York; that Exhibit 1 "imitates pearls in surface material * * * in color principally"; that he had never seen genuine pearls that were not smooth faced, "excepting such as have natural imperfections, but nothing of a deliberate design"; that he had never seen genuine pearls "resembling the shape of Exhibit 1"; that he had never seen imitations of genuine pearls with a flower design like Exhibit 1, nor with any type of design; that Exhibit 1 has "a pearly effect."

On cross-examination he testified "I have never seen any real pearl of this shape"; that the only solid pearl beads he is familiar with are "principally in the round, button, oval, or pear-shape— principally round. * * * and smooth surface."

The provisions of the Tariff Act of 1930 in conflict are as follows:

PAR. 1503. Spangles and beads, including bugles, not specially provided for, 35 per centum ad valorem; * * * imitation solid pearl beads * * * valued at more than one-fourth of 1 cent and not more than 1 cent per inch, one-half of 1 cent per inch and 60 per centum ad valorem; * * *.

Paragraph 1503 contains the following proviso:

Provided, That the rates on spangles and beads provided in this paragraph shall be applicable whether such spangles and beads are strung or loose, mounted or unmounted: * * *

It will be observed that the provision under which these beads were classified provides for beads in *imitation* of pearls; in other words, resembling the real pearls as produced by an oyster. The court cannot conceive of an oyster producing a pearl having a design thereon like the beads at bar. They cannot, therefore, resemble real pearls.

It is true, one of the witnesses testified that the Japanese produce cultured pearls, which are real pearls produced by inserting a foreign body inside the shell of the oyster, which then becomes encrusted by the oyster with the natural pearl lacquer, and becomes a cultured pearl; and that at times they insert cameos in the shell which become covered by the oyster lacquer naturally, and thus form pearls with a design thereon; but the witness admitted that the shape, form, and design of such cultured pearls did not compare with the design of Exhibit 1. The court is therefore of the opinion that the probability of there being any real pearls resembling in shape and design Exhibit 1 is so remote as not to be worth considering.

In addition, all the witnesses both for the plaintiff and defendant appear to be of the opinion that these beads bear a resemblance to real pearls in color only, and that real pearls are in round, oval, globular, or pear-shaped forms and are smooth without designs, not of the rectangular form of those at bar, encrusted with a design. Defendant's witness Meyer too was of the opinion that Exhibit 1 is not the exact color of cultured pearls, that it "has a pearl lustre finish" and "there is a difference in color"; that the resemblance between Exhibit 1 and genuine pearls was "solely in the pearl effect," and "in all other respects it is not in imitation of the popular imitation pearl beads."

The question involved is clearly one of fact. The provision of law under which merchandise is dutiable is determined by the facts. It is always a close question as to whether or not a bead of pearly color is an imitation solid pearl bead. Witnesses of probity and integrity differ, and honestly. We must reconcile these conflicts, and ascertain on which side of the scales of justice is the greater weight of the evidence. We have endeavored to do so in the case at bar. The study and history of beads in all their forms are of interest and delight to the student. The shapes, colors, and decorations of beads and other means of determining whether or not they are imitations of precious or semiprecious stones or pearls have so many ramifications that at times it becomes a close question as to where the line should be drawn between them.

On the whole we are of the opinion that the weight of the evidence and the sample itself indicate that these beads are not imitation pearls, or imitation pearl beads, and consequently are not dutiable as assessed. We hold them dutiable as claimed at 35 per centum ad valorem under paragraph 1503 of said act.

The protest is sustained to this extent insofar as it covers item 30222 on the consular invoice with entry 820916. It is overruled in all other respects. Judgment accordingly.